IN THE MATTER OF OPENING HUDSON AVENUE, IN THE CITY
OF ALBANY.

*Chap. 77 of 1870 — charter of city of Albany — street openings — duty of surveyor
and corporation counsel — compensation of.*

The common council of the city of Albany, by virtue of the power conferred
upon it by the provisions of its charter, to prescribe the duties of the city sur-
veyor, passed an ordinance requiring him to "survey and make maps of all
ground required for the opening, widening or straightening of any street,
road," etc. The charter provided that "no officer of the city government,
except a collector of city taxes, or counsel to the corporation, shall have or
receive any payment, or any compensation or commission, for services pertain-
ing to the duties of his office, in addition to his salary." By chapter 302
of 1872, providing for the appointment of commissioners by the court to
appraise the value of the land necessary for the opening and widening of streets,
and to assess the same upon the lands benefited, the chamberlain of the city is
authorized and directed "to pay the said commissioners, corporation counsel
and *surveyor* the costs and charges, as taxed by the judge or court." *Held*, that
the duties imposed upon the surveyor by the city ordinance related only to
the grounds required for the opening, and not to the lands to be assessed
therefor, and that he was entitled to a reasonable compensation for any services
he might render to the commissioners in preparing maps of the property taken
and assessed.

Prior to 1867, the Mayor's Court of the city of Albany had jurisdiction of proceed-
ings to acquire lands necessary for the opening and widening of streets, and
and was accustomed to tax the costs of the corporation counsel therein, on the
same principle as was applied in this case, although there was no law specifi-
cally defining the costs to be taxed. In 1867 the Mayor's Court was abolished,
and its jurisdiction vested in the Supreme Court.

*Held* (1), that under the act of 1872, requiring the chamberlain "to pay
\* \* \* the corporation counsel \* \* \* the costs and charges as taxed
by the judge or court," he was entitled to a reasonable compensation for
any services rendered to the commissioners, to be computed as between attor-
ney and client; (2), that his costs were not regulated by chapter 270 of 1854,
providing for costs in special proceedings; (3), that the actual labor performed
must be made to appear and a value be affixed thereto by the taxing officer;
(4), that the quantity of labor might be shown by the number of folios in the
papers necessarily drawn, and copies made and specific services rendered; and
that the taxing officer should fix a rate per folio for copies and a value for
specific services, irrespective of any fee bill, in the exercise of his best discre-
tion and judgment.

THIS is an appeal by the city of Albany and its tax-payers, from an order of the Special Term, taxing the costs and charges of E. J. Meegan, as attorney, and R. H. Bingham, as surveyor, in the above matter.

In 1873 these proceedings were instituted, in pursuance of a resolution of the common council of the city of Albany, for the purpose of widening Hudson avenue, in the city of Albany. Upon the coming in of the report of the commissioners, its confirmation was opposed by a number of the persons whose property was assessed, as benefited by the proposed improvement, and an order was entered, denying the motion for its confirmation, which order was, upon appeal, approved by the General Term (2 Hun, 580); and upon a further appeal to the Court of Appeals, the appeal was dismissed.

Subsequently the case was brought before Mr. Justice OSBORN, and the following bill of costs was taxed and allowed by him:

## SUPREME COURT.

IN THE MATTER OF OPENING AND WIDENING HUDSON AVENUE, FROM No. 67 HUDSON AVENUE TO BROADWAY.

| | | |
|---|---:|---:|
| Three commissioners | $4,125 | 00 |
| R. H. Bingham and James Browne for surveys | 4,550 | 00 |
| Printers' fees, Argus, Journal and Express | 100 | 00 |
| Chamberlain's clerk | 500 | 00 |
| Retainer attorney and counsel | 8 | 00 |
| Attorney and counsel attending motion appointing commissioners | 8 | 00 |
| Attorney and counsel notice and swearing commissioners | 8 | 00 |
| Drawing motion papers for appointment, 25 cents; 1 engrossed do | 10 | 50 |
| Postage and serving notices, etc | 51 | 75 |
| Drawing special inquisition and ret. including all papers, being 13,125 folios, 28 cents | 3,675 | 00 |
| Engrossing do | 1,837 | 50 |
| Copy to file with chamberlain | 1,837 | 50 |

| | | |
|---|---:|---:|
| Title to premises taken and assessed ................. | $1,575 | 00 |
| Attorney and counsel attending motion to confirm *nisi*, $8; briefs, $3 ............................. | 11 | 00 |
| Drawing order to confirm *nisi*, 2 folios, 56 cents; engrossed, 28 cents ; clerk's fees, all .............. | 1 | 34 |
| Attorney and counsel motion to confirm copy, etc...... | 2 | 80 |
| For costs, $1 ; copy do., 50 cents ................... | 1 | 50 |
| | $18,324 | 04 |

The questions presented by this appeal, were, as to the right of the city surveyor and corporation counsel, to receive any compensation for services rendered to the commissioners.

Section 3 of title 6 of the charter (chap. 77, Laws of 1871), provides that " no officer of the city government, except a collector of city taxes or counsel to the corporation, shall have or receive any payment or any compensation or commission for services pertaining to the duties of his office, in addition to his salary." The common council were authorized to prescribe the duties pertaining to the offices of corporation counsel and city surveyor. Article 1 of chapter 3 of the ordinances of the city of Albany, provides :

SECTION 1. The law department shall consist of the law committee of the common council, and the corporation counsel. It shall have an office in " the City Building," and shall have charge of and conduct all the law business of the city, and of the departments thereof, and all other law business in which the city shall be interested, when so ordered by the city ; and shall have charge of and conduct the legal proceedings necessary in opening, widening and altering streets, and draw the leases, deeds and other papers connected with the finance and other departments. The corporation counsel shall be the chief officer of said department.

*Grenville Tremain*, for the city of Albany.

*R. W. Peckham*, for the appellants.

*N. C. Moak*, for Meegan and Bingham, respondents.

BOARDMAN, J. :

In 1873 proceedings were instituted, for the opening and widening of Hudson avenue, commissioners appointed, surveys made, legal services rendered in aid of the commissioners, and finally an inquisition was found or report made, and filed with the county clerk. The attempt to open, etc., the avenue was afterwards abandoned, the Special Term having denied the motion to confirm the commissioners' report. During this time Meegan was the corporation counsel, and Bingham city surveyor. Both had rendered important and valuable services in aid of the commissioners during the pendency of the proceedings. In June, 1875, their costs and charges were retaxed upon notice and against opposition, at the sums specified in the order appealed from, and paid. Such taxation and payment were under the Laws of 1872, pages 764, 768, which provided for the payment of such "costs and charges as taxed by the judge." By a previous part of the same section 1, "The costs, charges and expenses incident to the proceedings, which shall, previous thereto, be taxed and certified as to the amount, by any judge of a court of record" shall be added to the amount of damages and apportionment, and assessed upon property by the commissioners.

By reason of the abandonment of the proceeding, these costs cannot be assessed against property holders for benefits, but they become a direct charge against the city, and incidentally against its tax-payers. Nor are the costs taxed upon the ordinary basis, of fixing an amount to be recovered against a hostile party. It is an adjustment of the amount due as between attorney and client. It may be claimed that Meegan was the attorney of the commissioners. Still both alike were acting for the city, and the city was directly responsible for payment for such services.

On the 27th day of June, 1873, the Common Council of the city passed a resolution approved by the mayor, directing the chamberlain to pay such legal costs and expenses * * * provided the costs and expenses are taxed by the judge, before whom the proceedings were had.

Upon such retaxation in July, 1875, Mr. Bingham's costs and charges were allowed, upon the authority of Mr. Justice LEARNED's

opinion *In the Matter of Orange Street,*\* and upon the uncontradicted value as established by Mr. Bingham's affidavit.

\* The following is the opinion of LEARNED, J. :

### IN THE MATTER OF OPENING ORANGE STREET.

*Grenville Tremain,* corporation counsel.    *N. Moak,* counsel for Mr. Bingham.

LEARNED, J. :

This is an application for the taxation of costs, charges and expenses in the above entitled matter under the city charter, as amended by Session Laws 1872, chapter 302, section 1.

The commissioners have made out and presented their bill, duly verified. It includes a charge for the "bill of surveyor for maps of property taken and assessed." The corporation counsel, upon due notice to Mr. Bingham, the city surveyor, opposes the allowance of this item. It is not disputed that the services were rendered, that they were proper, and that the amount charged is reasonable. The only objection made is, that the services rendered pertained to the official duties of the city surveyor, and that therefore he can receive no compensation therefor. (City charter [Laws 1870, chapter 77], title 6, section 3.)

It appears, by affidavit, that the services for which this charge is made are for surveys and maps of land and property to be assessed, and on which the damages, costs and charges are to be apportioned, and that the surveyor was employed by the commissioners. It also appears that the practice for over twenty years has been that the surveyor should be allowed for such services as not within official duties.

Title 3, section 10 of the city charter authorizes the mayor; with the consent of the common council, to appoint a city surveyor, and the common council are to prescribe his power and duties. That is done by chapter 4, article 4, section 4 of the ordinances of the city. The only parts of that section, which are claimed to be important, are these :

Subdivision 3. "To survey and make maps of all ground required for the opening, widening or straightening of any street, road, avenue, public square, park or dock,"   \*   \*   \*   " and to make profiles, maps and estimates for the assessors appointed by the common council, in accordance with section 15, title 6, chapter 77 of the Laws of 1870.

Now it will be seen that the first clause applies only to the grounds required for the opening, etc., of streets, etc., not to the lands to be assessed. It refers undoubtedly to such surveys and maps as are necessary to enable the common council to decide whether or not a street shall be opened, widened, etc.

As is well known, after the common council have decided on such a matter, application is made to the Supreme Court for commissioners, who are to assess the damages on the property benefited, and the charge in question is for the surveys, used by the commissioners, of the lands assessed, not of the lands taken.

The second clause applies, as will be seen by reference to the statute, to assessors appointed not by the Supreme Court, but by the common council, not to

The costs and charges of Mr. Meegan are allowed, upon the grounds that the services rendered, were not required under his

assess damages for lands taken, but to assess damages for altering the grade of a street.

The fifth subdivision requires the surveyor to survey, make maps, etc., of all streets, lanes, etc., "directed by the common council to be filled, excavated, paved, curbed, flagged or constructed," * * * "and to make maps showing all lots benefited by any such work or improvement, when done for the city by contract or otherwise."

This plainly refers not to the laying out of a new street or the taking of private property for public use, but to the improvements, such as flagging, and the like, of streets already taken. It speaks of work "done for the city," thus using language which describes excavations or other improvements of existing streets.

The remainder of that subdivision requires him "to make estimates, statement and reports to the street department, or to such person or persons as shall by law be required to make the apportionments of improvements ordered by the common council." This clause, also like the former, refers to what are properly "street improvements." They are matters which are to be done under sections 13, 14 and 15 of title 6 of the charter; they do not mean proceedings under title 7, by which private property is taken.

By subdivision 7 he is to make any other surveys, etc., "required by the common council, or any committee thereof, or street department." That language does not describe the surveys for these commissioners.

By subdivision 8 he is to file all completed maps, etc., in the street department; but the surveys which are made for these commissioners properly form a part of their report to the court, and would belong to the files of the court. The commissioners are required by the statute to designate and describe the lots in their report. The maps necessary for this purpose, therefore, seem not to be embraced within the maps required to be filed in the street department, as are the maps made by the surveyor in his official duties. There are no other provisions claimed to indicate that this work is within the official duties of the city surveyor, and from the language used by the common council in their ordinances, I am unable to see that they intended to require this class of work from him.

But the point is made more certain by the provisions of the amendatory act of 1872 (chapter 302), that amends title 7, section 1, so that it reads, in conclusion: "Upon the presentation or confirmation of the report of said commissioners, the chamberlain is authorized and directed to pay the said commissioners, corporation counsel and *surveyor* the costs and charges, as taxed by the judge or court."

This is an express recognition of the fact that surveyors' costs and charges in these matters are to be paid. It must be taken to declare either that these services are not within the official duties of the city surveyor, or that in this particular he may receive fees additional to his salary. It is the latest legislation on the subject, and must control. If this work was to be done by the city surveyor, as a part of his official duty, which the commissioners could require him to perform without special compensation, it would have been absurd to provide for

official duties as corporation counsel, but under a special employment, for which he was entitled to special pay ; that the evidence before the judge, showed the services to be of the value charged, that the basis of valuation was the same, that had been in use in such cases by himself and his predecessors for many years, and allowed and paid without objection, and that over $4,000, of the amount of his bill, had been paid by him, to clerks for services in this same matter.

I shall affirm the order, so far as it allows the claims of Mr. Bingham, for the reasons stated by Justice LEARNED, and concurred in by Justice OSBORN. The reasoning on the other branch of the case may to some extent apply. Our attention henceforth will be devoted to Mr. Meegan's claim, to which the appellants interpose the following objections :

First. That he was entitled to no compensation by way of costs, beyond his salary as corporation counsel, the duties of his office embracing the services performed.

I think that point is settled by the opinion of LEARNED, J., before cited, and that the act of 1872 recognizes the right to extra compensation for such services, and directs payment thereof. The last paragraph of section 1 is as follows : " Upon the presentation or confirmation of the report of said commissioners, the chamberlain·is authorized and directed to pay to said commissioners, *corporation counsel* and surveyor, the costs and charges as taxed by the judge or court."

Second. It is objected, that these costs and charges were taxed,

the payment to a surveyor, as to the commissioners, of costs and charges to be taxed.

It might be suggested against this item that, as the city surveyor receives a salary, all his time belongs, in fairness, to the city. But this rule certainly has never been held to apply to the mayor or corporation counsel. And, in fact, subdivision 10 of section 4, article 4 of the city ordinances, expressly recognized the right of the surveyor to do other work than that required by his office, only giving the latter the preference.

The proceedings before the commissioners are in court. Their action is a *quasi* trial. The services rendered by the surveyor are somewhat like those he might render as an expert on a trial before a jury. They are not, in my opinion, embraced within those which he is by the ordinances required to perform.

As there is no objection in respect to value and necessity of the services, the item is allowed, and the bill not otherwise objected to is taxed as presented.

under and by virtue of a fee bill long since repealed, and hence furnishing no authority, for such allowances as were made by the judge.

In making this objection the appellants concede, that costs might be taxed for Meegan under the Code, by virtue of the law of 1854, chapter 270, if Meegan is entitled to any costs at all, and *In re Rens. and Sar. R. R.* v. *Davis* (55 N. Y., 145), is cited as authority.

By analogy, that case is very strong authority for saying these were special proceedings, controlled as to costs by the law of 1854. But, in a case to vacate an assessment for a local improvement in the city of New York, DENIO, Ch. J., held that the act of 1854 had no application. (*In the Matter of Dodd*, 27 N. Y., 629.) This expression of opinion was, however, doubted by MASON, J., in *People* v. *Boardman* (3 Abb. Ct. App. Dec., 483), so far as it affected the right of appeal to the Court of Appeals.

If this was a special proceeding, the right of Meegan to costs, to be assessed against landowners, would of necessity be confined to such as the Code permits. If each piece of land to be condemned in widening the street, and each piece of property assessed for benefits, is to be treated as a separate and independent special proceeding, the costs and charges under the Code might be worse than the present.

I am not prepared to say, what might be the rule in such an event. Each landowner is entitled to litigate and give evidence in respect to his own property, without respect to what others may do. As to him, it might be a distinct special proceeding, for which the parties might be entitled to costs, according to results. But if the entire proceedings be declared a single proceeding, under which a single bill of costs could be taxed or collected, as fixed by the Code, the compensation of the attorney would be ridiculously inadequate.

Prior to 1867, jurisdiction of these proceedings was vested in the Mayor's Court, by which these costs were taxed. During that time the act of 1854 could not have applied. In 1867 the Mayor's Court was abolished, and its jurisdiction conferred upon the Supreme Court. (1 Laws of 1867, 506.) Prior to 1867 there was no law specifically defining the costs to be taxed, yet the Mayor's Court taxed these costs upon the same basis as in this case. Indeed, it is

not going too far to say, that the mode of getting at the work done, by charging by the folio, would result more nearly in justice than the gross allowances provided for by the Code. The costs and charges were to be determined. In the absence of positive law, the taxing officer is required to do justice between all parties. He should allow such things as are equitable and just, and disallow all others. The provisions of the Code are not adapted to the case. The charges contemplated by the statute, must have reference to payment for such services, as long custom and usage had sanctioned, a just and reasonable compensation. I think the taxing officer was at liberty, to get at such just compensation in the most convenient mode, having reference to the facts before him. In doing so, the practice, custom and usage under the law should have great weight. The engagement between the parties, may be presumed to have been made in view of such usages and customs; and, if so, they have made a law unto themselves, and should be bound by it.

There is strong reason for such a rule in this particular case. It is an adjustment of costs and charges between attorney and client — between Mcegan, the corporation counsel, and the city. The city, in the absence of positive law, or in spite of the Code, if that be applicable, is bound to pay Meegan a reasonable compensation for his services. The law of 1872 says it shall be paid when, or as taxed by the judge. The resolution of the common council of June, 1873, directs the chamberlain to pay such costs and expenses, provided they are taxed by the judge before whom the proceedings are had. The value of the services are proved and not controverted. The expenses paid by Meegan, are also proved to be over $4,000. The charges are taxed and allowed as required by law, and contemplated by the resolution.

The chamberlain, in pursuance of such law and authority, has paid Meegan the amount. And now this court is asked to reverse that order, without a single allegation, that the amount paid is unreasonable compensation for the services, but only upon the ground that there is no positive law providing, how, Meegan's bill for services shall be made up for presentation to the taxing officer.

In another view, Meegan was the employe of the commissioners, and was to be paid by or through them, in which case it became a charge or expense attending the execution of the commission,

which the taxing officer was bound to recognize, if reasonable or proper, upon the proofs before him.

The case (*Matter of Extending Canal Street*, Davis' Comp. of Laws of N. Y. City, 1261–1264), cited in the brief of respondent's counsel, confirms some of the views hereinbefore taken, but I have not laid much stress upon it, for the reason its construction related specially to statutes affecting the city of New York, and to a rule of court adopted by the courts of, and for that city alone.

The great difficulty arises from the absence of any proper and suitable legislation. For want of that, many intricate and difficult questions are presented for adjudication, in which the decisions are mere devices in the attempt to do justice in spite of careless legislation, or in the absence of necessary statutory enactments.

My examination of this case has led me, with some hesitation, to the following conclusions :

First. The intent of the law is, that the judge shall allow, such sum as shall indemnify the city, for its expenses in the opening of a street, and that the sum so allowed shall be apportioned upon the property benefited.

Second. In cases like this, where the proceedings are abandoned, the rule of taxation remains the same, but the amount taxed, of necessity, becomes a charge upon, and to be paid by the city and its tax-payers generally.

Third. In either case, I think the purpose of the law is to allow to the persons rendering the services an adequate compensation therefor.

Fourth. As the services are of a character to be incapable of fair adjustment by the allowance of gross sums for all services rendered between fixed limits of progress, as prescribed by the Code, the actual labor performed must be made to appear, and a value affixed thereto by the taxing officer.

Fifth. The quantity of labor may be shown by the number of folios in the papers necessarily drawn, and copies made, and specific services rendered; and the taxing officer should fix a rate per folio for copies, and a value for specific services, irrespective of any fee-bill, in the exercise of his best discretion and judgment.

Sixth. In proceedings of this character, I think, weight should be given to custom and usage of a uniform and continuous charac-

ter, before and since the act of 1854; but such customs should only be invoked in aid of justice and right, and should not be held binding when they sanction exorbitant compensation for the services.

Seventh. There being no evidence that the charges taxed, or the compensation thereby given, are excessive, the order should be sustained.

For the reasons given, I think the order appealed from should be affirmed, with ten dollars costs of appeal and expenses of printing, to be paid by the city of Albany to the respondents, Meegan and Bingham, or their attorney.

Present — BOCKES and BOARDMAN, JJ.; LEARNED, P. J., not acting.

Ordered accordingly.